In the Interest of R.R. and S.J.S.

No. 05–05–00918–CV.

Court of Appeals of Texas,
Dallas.

April 25, 2006.

Dean M. Swanda, Swanda & Swanda, Arlington, for Appellant.

Irving Wyatt Queal, Garyord Anderson, April Lynn Carter, Dallas, for Appellees.

Before Justices WHITTINGTON, RICHTER, and FRANCIS.

## OPINION

Opinion by Justice WHITTINGTON.

Ambrea Rodgers raises four issues on appeal, challenging the trial court's default judgment terminating her parental rights. First, Rodgers claims the trial judge erred in denying her motion for new trial because she met the three *Craddock* requirements. *See Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939). In her second issue, Rodgers complains that, to the extent civil procedure rule 245 allows for the setting of uncontested cases, rule 245 violates her right to due process under the United States Constitution. *See* TEX.R. CIV. P. 245. In her third and fourth issues, Rodgers contends family code section 107.013 violates her right to equal protection and due process under the United States Constitution. *See* TEX. FAM.CODE ANN. § 107.013 (Vernon Supp.2005). We affirm the trial court's judgment.

Initially, we note that, Rodgers does not allege in her brief that the default judgment is void or the trial court lacked jurisdiction. She does not argue the default was improperly taken. Nor does she contend the evidence was legally or factually insufficient to support the termination of her parental rights or that the default judgment was otherwise erroneous. *See Stoner v. Thompson,* 578 S.W.2d 679, 684–85 (Tex.1979) (default judgment erroneous only if (i) petition or other pleading of non-defaulting party seeking affirmative relief does not attempt to state cause of action within court's jurisdiction, (ii) petition or pleading for affirmative relief does not give defendant fair notice of claim asserted, or (iii) petition affirmatively discloses invalidity of such claim). Because she does not attack the default judgment on any of these grounds, we limit our review of Rodgers's four issues to whether the

trial judge abused her discretion in denying Rodgers's motion for new trial.

In her brief, Rodgers argues there is "some authority that when a defendant establishes that she did not receive notice of a trial setting, she need not satisfy the other *Craddock* requirements." Relying on this authority, Rodgers argues that, because she did not receive notice of the trial setting that resulted in the termination of her parental rights, she need not establish any of the *Craddock* requirements. The cases Rodgers cites are post-answer default judgment cases-i.e., cases in which the defendant filed an answer but was not given notice of a hearing date or trial setting. When a defendant files an answer, she is entitled to notice of hearings or trial settings. *LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390, 390–91 (Tex.1989) (holding that once defendant made appearance in cause, he is entitled to notice of trial setting as matter of due process under Fourteenth Amendment to the United States Constitution); *see also Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex. 1988) (holding trial court and appellate court erred in requiring defendant to show he had meritorious defense when record established that defendant had filed answer but had no actual or constructive notice of trial setting). In contrast, in cases in which a defendant has been served properly with the citation and petition but nevertheless does not answer or otherwise appear, the plaintiff is not required to notify the defendant before taking a default judgment. *In re J.A.G.*, 172 S.W.3d 155, 159 (Tex.App.-Beaumont 2005, no pet.); *Wilson v. Wilson*, 132 S.W.3d 533, 536 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *Brooks v. Assoc. Fin. Servs. Corp.*, 892 S.W.2d 91, 94 (Tex.App.-Houston [14th Dist.] 1994, no writ); *see also In re S.A.P.*, 169 S.W.3d 685, 694 (Tex.App.-Waco 2005, no pet.) (in discussion of collateral attack on default judgment, entered against mother who was

served with citation and amended petition that sought termination but failed to file answer, court concluded judgment was not void). Because Rodgers was properly served but did not answer, we conclude the cases she cites for the proposition that she was entitled to notice of hearings or trial settings are distinguishable and do not apply to this case.

We review a trial judge's decision denying a motion for new trial under an abuse of discretion standard of review. *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *Novosad v. Cunningham*, 38 S.W.3d 767, 770 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Absent a showing of an abuse of discretion, we will not disturb a trial judge's ruling. *Evans*, 889 S.W.2d at 268; *Comanche Nation v. Fox*, 128 S.W.3d 745, 749 (Tex.App.-Austin 2004, no pet.). An abuse of discretion occurs when the trial judge fails to correctly analyze or apply the law. *Comanche Nation*, 128 S.W.3d at 749.

A default judgment should be set aside and new trial ordered in any case in which

> the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock*, 134 Tex. at 393, 133 S.W.2d at 126. Thus, in a motion for new trial, a defendant must (i) show her failure to answer was not intentional, (ii) set forth a meritorious defense, and (iii) establish that the motion for new trial was filed at a time when granting it would not harm the plaintiff. *See Lopez*, 757 S.W.2d at 723; *Novosad*, 38 S.W.3d at 770. When applying the

*Craddock* test, the judge should look to "the knowledge and acts of the defendant" contained in the record. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex.1992). Moreover,

> [w]here factual allegations in a movant's affidavits are uncontroverted, it is sufficient that the motion for new trial and accompanying affidavits set forth facts which, if true, would satisfy the *Craddock* test. However, conclusory allegations are insufficient.

*Holt Atherton*, 835 S.W.2d at 82 (internal citations omitted).

 Conscious indifference has been defined as failing to take some action which "would seem indicated to a person of reasonable sensibilities under the same circumstances," *Liberty Mut. Fire Ins. Co. v. Ybarra*, 751 S.W.2d 615, 618 (Tex.App.-El Paso 1988, no writ) or "the failure to take some action that would seem obvious to a reasonable person in the same circumstance." *In re A.P.P.*, 74 S.W.3d 570, 573 (Tex.App.-Corpus Christi 2002, no pet.); *see Padrino Maritime, Inc. v. Rizo*, 130 S.W.3d 243, 248 (Tex.App.-Corpus Christi 2004, no pet.) (conscious indifference is failure to take some action that would seem obvious to reasonable person in same or similar circumstance); *Tex. Sting, Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 650 (Tex.App.-San Antonio 2002, pet. denied) (same); *Prince v. Prince*, 912 S.W.2d 367, 370 (Tex.App.-Houston [14th Dist.] 1995, no writ) (same).

Although Rodgers contends she met each of the *Craddock* requirements and was entitled to a new trial, we cannot agree. With respect to the first requirement, Rodgers asserts in her affidavit attached to her motion for new trial that her failure to answer was not intentional or the result of conscious indifference. Rather, she states it was a mistake or accident because she has "only a 9th grade education," had no prior dealings with CPS, and "did not know how the system worked." In her affidavit, she does not deny receiving the termination paperwork but states she "received a lot of paperwork and didn't realize its significance. Filing an answer and threatening me with a default judgment meant nothing to me." She states she relied on the CPS worker who told Rodgers that she was there to help.

A review of the record shows Rodgers was personally served, while in jail, with the September 2, 2004 petition entitled Suit Affecting the Parent–Child Relationship Petition for Emergency Care and Temporary Managing Conservatorship. The petition, brought by Dallas County Child Protective Services (CPS), stated the suit concerned Rodgers's child, R.R. and that Rodgers was incarcerated. The petition asked that CPS be appointed temporary managing conservator and stated there was an "immediate and/or continuing danger to the physical health and/or safety of the subject child if returned to the parent." Rodgers did not respond.

Rodgers was then personally served with the November 30, 2004 First Amended Petition for Termination and Emergency Care and Temporary Managing Conservatorship concerning R.R. and Rodgers's other child, S.J.S. The amended petition alleged it was in the best interest of each child to terminate the father-child relationship and the mother-child relationship. The amended petition also alleged there was a continuing danger to the children if returned to Rodgers. Again, Rodgers did not respond.

Finally, Rodgers was personally served with the December 27, 2004 Second Amended Petition for Termination. This pleading concerned R.R. and S.J.S. and stated CPS sought to terminate Rodgers's relationship with each child. Rodgers did not respond. Only after the trial judge

signed the June 3, 2005 decree of termination did Rodgers write to the trial judge. In her June 8, 2005 letter, Rodgers stated she intended to appeal the termination of her parental rights, was indigent, and "would like the courts to appoint me representation in this matter."

██ Thus, the record shows Rodgers was personally served, over a four-month period, with three pleadings, each of which dealt with removing Rodgers's children from her care, either temporarily or permanently. Rodgers concedes she received the termination petition, yet she made no inquiry regarding the termination papers she received, nor did she attempt to seek advice or help during the nine-month period from the date of the first pleading to entry of the termination decree. And although Rodgers states in her affidavit that she would have written and requested an attorney if she had known she needed to, the record shows she was aware she could write the trial judge and request help, including the appointment of counsel to represent her in an appeal, which she did just days after the entry of the trial court's judgment. The record also shows she wrote the district clerk in the days following the trial court's judgment (but prior to the appointment of counsel) requesting "the correct documentation that is needed in filing an appeal on my child custody child protective services case. According to family law code and criminal procedures I have the right to appeal this case." We conclude these actions constitute evidence of conscious indifference and are sufficient to support the trial judge's decision to deny her motion for new trial. *See Prince,* 912 S.W.2d at 370 (trial judge did not abuse discretion in denying motion for new trial when facts showed that, although appellant knew his wife had filed for divorce one year before judgment was entered and had notice from her one week prior to hearing that she was going to go through with divorce, he failed to answer, seek any legal help or advice, or make any inquiry about import of papers he had received); *Sunrizon Homes, Inc. v. Fuller,* 747 S.W.2d 530, 533 (Tex.App.-San Antonio 1988, writ denied) (trial court did not abuse discretion in denying motion for new trial because record showed failure to respond was intentional; although appellant claimed general manager of business was "too busy" to answer lawsuit, record showed appellant had three notices of need to respond to suit); *Johnson v. Edmonds,* 712 S.W.2d 651, 652–53 (Tex.App.-Fort Worth 1986, no writ) (appellant's actions were evidence of conscious indifference and sufficient to support trial court's denial of motion for new trial where appellant testified he received "papers" from constable and read them but neither sought help nor advice nor made inquiry about the papers he had received or their importance); *Butler v. Dal Tex Mach. & Tool Co.,* 627 S.W.2d 258, 260 (Tex.App.-Fort Worth 1982, no writ) (record of appellant's testimony that he did not understand what he had read, put papers on desk and did nothing further until receiving notice of default judgment at which time he consulted with attorney, is "ample evidence to support" implied finding that failure to file answer was conscious indifference). In light of the record before us, we conclude Rodgers failed to meet the first *Craddock* requirement. Therefore, the trial judge did not abuse her discretion in denying Rodgers's motion for new trial. We overrule Rodgers's first issue.

In her remaining three issues, Rodgers challenges the constitutionality of procedural rule 245 and family code section 107.013, claiming they violate her right to equal protection and due process under the United States Constitution. In her brief, however, Rodgers concedes the default judgment is not void and that the default judgment was not "improperly taken;" therefore, she is limited to raising

these issues within the context of a *Crad-dock* analysis. Because Rodgers failed to meet the first requirement of *Craddock*, we do not reach the remaining issues raising constitutional challenges.

We affirm the trial court's judgment.